UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-20005-CR-GOLD/GOODMAN

UNITED STATES OF AMERICA,

v.

ISRAEL CORTES-MORALES,
ERNESTO CORTES-CASTRO, and
ALBERTO CORTES-CASTRO,

    Defendants.
_____/

## **UNITED STATES' LEGAL MEMORANDUM ON RESTITUTION**

The United States submits this memorandum in support of an award of restitution for the victims of human trafficking in this case. Under seal, the United States submitted victim loss statements to the court. The government has given copies of the loss statements to defense counsel. The government intends for this memorandum to summarize the law of restitution in human trafficking cases.

For the reasons set out below, and that the government will present at the restitution hearing on February 3, 2012, the government requests that the court find by a preponderance of the evidence that Israel Cortes-Morales, Ernesto Cortes-Castro, and Alberto Cortes-Castro owe restitution to the victims, in the amounts requested. *See* 18 U.S.C. §3664(e) (proper amount of restitution must be determined by a preponderance of the evidence). In addition, the government requests that the defendants be held jointly and severally liable for the entire amount of the victims' losses.

## I. Recoverable Losses

The defendants pled guilty to conspiring to commit human sex trafficking, in violation of 18 U.S.C. §§1591(a)(1) and (b)(1); all in violation of 18 U.S.C. §1594(c). Restitution for the victims of defendants' crime is governed by 18 U.S.C. §1593, which says that the court "shall order restitution for any offense under this chapter." The restitution order "shall direct the defendant to pay the victim ... the full amount of the victim's losses." *Id.* In addition to setting out its own loss definition, Section 1593 incorporates the loss definition of 18 U.S.C. §2259(b)(2). *See* 18 U.S.C. 1593(b)(3). So, among other losses, the victims of human sex trafficking – such as the victims here – can recover costs that they incurred for medical services relating to physical, psychiatric, or psychological care; necessary transportation, temporary housing, and child care expenses; and "the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. § 201 et seq.)." 18 U.S.C. §§ 1593(b)(3) and 2259(b)(2).

In this case, as the victims' loss declarations and the uncontested PSI facts set out, the victims' losses are substantial. By forcing the victims into prostitution against their will, the defendants generated significant ill-gotten profits for themselves. And, at least one victim incurred costs for medical services for physical injuries that were proximately caused by the criminal conduct here. *See* S.J.G. Loss Statement. That victim also incurred child care costs and transportation expenses. *Id.*

## II. Amounts by which defendants were unjustly enriched.

Again, 18 U.S.C. § 1593(b)(3) entitles victims of human sex trafficking to recover: "the greater of the gross income or value to the defendant of the victim's services or labor or the value

of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. § 201 et seq.)." For purposes of the restitution awards here, the victims wish to pursue, and the government will advance, the unjust enrichment analysis. That is, each victim should receive the gross income or value that the defendants received as a result of the victims' forced prostitution. It is likely that the victims would have remained in Mexico with their families had the defendants not smuggled them into the United States, and the victims here are not basing their loss amounts on what they could have earned at a regular job in the United States. In any event, a Fair Labor Standards Act earnings figure for each victim would likely be far less than what the defendants made by exploiting them.

In declarations to the probation officer, and in declarations and affidavits filed with this court under seal, the victims set out estimates of the amounts of money that they earned for the defendants through their forced prostitution (i.e., estimates of the defendants' "gross incomes"). At the hearing, the government will ask the court to order, as to each victim, a restitution amount that totals the gross income that the defendants derived from prostituting that victim. *See United States v. Mammedov,* 304 Fed. Appx. 922 (2d Cir. 2008) (affirming restitution order based on amount that defendant made through forced prostitution of victims).

In requesting the restitution amounts, the government will rely primarily on the victims' sworn loss statements and the uncontested facts of the defendants' PSIs. (The relevant facts are the same in each PSI). It is proper for the court to base its restitution amounts on this evidence, since it bears minimal indicia of reliability and the defendants, if they choose to, can contest the numbers at the hearing. *See United States v. Bourne,* 130 F.3d 1444 (11th Cir. 1997) (hearsay evidence as to amount of loss suffered by bank supported restitution award; explaining that in determining appropriate amount of restitution, sentencing court may consider hearsay evidence

that bears minimal indicia of reliability so long as defendant is given opportunity to refute the evidence); *see also United States v. Fu Sheng Kuo,* 620 F.3d 1158 (9th Cir. 2010) (explaining that victim affidavits will generally provide reliable evidence to support a restitution order). Indeed, the defendants were already given a chance to contest the victim loss numbers that were set out in paragraphs 40, 41, and 42 of their PSIs.  They did not do so, so those loss numbers are uncontested.  *See United States v. Smith*, 528 F.3d 423 (5th Cir. 2008) (holding that restitution award was supported by evidence where, even though there was no live testimony or sworn victim affidavit, the presentence report set out a loss amount that came from probation officer's interview of victim and defendant did not rebut this evidence).

The evidence that the government presents to the court is reliable. The defendants pled guilty to conspiring to force women into prostitution. The uncontested facts of the PSIs are that "each woman was required to have sex with between 20 and 40 men each night.  Each client paid about $30 for 15 minutes of sex with the woman.  For the defendants, it was a family business.  They kept some of the money and sent the rest to family members in Mexico . . ."  The defendants also agreed to these facts during their plea colloquies.  These facts, admitted to by the defendants, corroborate and support the loss amounts in the victims' loss statements.

In addition, it is proper for the court to use estimates in fashioning a restitution order. It is impossible to determine with precision how much money the defendants made at the expense of their victims.  The law is that reasonable estimates and approximations are proper when it comes to restitution. *See United States v. Furtrell,* 209 F.3d 1286 (11th Cir. 2000) (affirming restitution award and ruling that a court may accept estimates and may reasonably approximate actual damages to a victim).

### III. Joint and Several Liability

If the court finds that more than one defendant has contributed to a victim's loss, the court may apportion liability or it "may make each defendant liable for payment of the full amount of restitution." 18 U.S.C. § 3664(h).  Here, the defendants pled guilty to a *conspiracy* to commit human sex trafficking.  And, each defendant was involved in compelling victims into prostitution and collecting the proceeds for his own and the other defendants' benefit. As integral members of the conspiracy, to which they pled guilty, the defendants should be held jointly and severally liable for the entire restitution award, meaning that each defendant should be jointly and several liable for each restitution amount pertaining to each victim.  *See United States v. Alas,* 196 F.3d 1250, 1251-52 (11th Cir. 1999) (holding that defendant was jointly and severally liable for total amount of checks cashed during duration of conspiracy, including checks cashed while defendant was incarcerated on a separate offense; explaining that a defendant guilty of a conspiracy is liable for all the acts "that flow as a natural consequence of the conspiracy"); *United States v. Davis,* 117 F.3d 459 (11th Cir. 1997) (affirming district court's order that was based on facts in the PSI and holding defendants in fraud conspiracy jointly and severally liable for entire restitution amount; explaining that where a defendant is convicted for a fraud conspiracy, he can be ordered jointly and severally liable for restitution for losses caused by the entire fraud scheme, not just for specific losses caused by specific acts of that defendant).

Moreover, because the victims' losses are substantial, an order holding each defendant jointly and severally liable for each victim's restitution award will best serve the interests of justice by increasing each victim's opportunity to recover some meaningful measure of restitution, however paltry in comparison to her loss.

    Respectfully submitted,

    Wifredo A. Ferrer
    United States Attorney

    /s/Marlene Rodriguez
    Marlene Rodriguez (120057)
    Assistant United States Attorney
    99 N.E. 4th Street
    Miami, Florida 33132
    305-961-9206
    Marlene.Rodriguez@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on February 1, 2012, I electronically filed a copy of this document with the Court via CM/ECF.

    /s/Marlene Rodriguez
    Marlene Rodriguez (120057)